UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORRAINE HAGLER LOTT,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | No. 2:17-cv-00986-KJN<br><br><br><br>ORDER |

Plaintiff Lorraine Lott seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1] In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from January 9, 2015, her alleged disability onset date, through the final administrative decision. (ECF No. 13.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 16.) Thereafter, plaintiff filed a reply brief. (ECF No. 17.)

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 6, 7.)

1

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the Commissioner's final decision.

I. BACKGROUND

Plaintiff was born on February 6, 1960; she earned a nursing degree and previously worked at Sutter Community Hospital of Sacramento for 22 years as a surgical nurse. (Administrative Transcript ("AT") 46, 207.) Plaintiff applied for DIB on March 15, 2016, alleging that she was unable to work as of January 9, 2015, primarily due to post-laminectomy syndrome. (AT 79-80, 85, 177, 248, 270.) On April 29, 2016, the Commissioner determined that plaintiff was not disabled. (AT 102-06.) Upon plaintiff's request for reconsideration, that determination was affirmed on June 29, 2016. (AT 109-15.) Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on November 14, 2016, and at which plaintiff, represented by an attorney, and a vocational expert ("VE") testified. (AT 41-78, 119-21.)

In a decision dated November 29, 2016, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from January 9, 2015, plaintiff's alleged disability onset date, through the date of the ALJ's decision. (AT 23-36.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on April 12, 2017. (AT 1-7.) Thereafter, plaintiff filed this action in federal district court on May 10, 2017, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II. ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly rejected the opinion of plaintiff's treating physician; and (2) whether the ALJ improperly determined plaintiff's transferrable skills from her past work as a surgical nurse.[2]

---

[2] Plaintiff's briefing raised these issues in reverse order.

2

III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[3] As an initial matter, the ALJ noted that plaintiff met the insured

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

status requirements of the Act for purposes of DIB through June 30, 2020. (AT 25.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since January 9, 2015, plaintiff's alleged disability onset date. (Id.) At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the spine and anxiety disorder. (Id.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 26.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). She can occasionally climb ladders, ropes or scaffolds and can occasionally stoop, kneel, crouch or crawl. She can frequently climb ramps and stairs, or balance. She can perform simple, and detailed but not complex work.

(AT 27.) At step four, the ALJ found that plaintiff was unable to perform any past relevant work. (AT 34.) However, at step five, the ALJ determined, based on the VE's testimony, that considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in

---

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

significant numbers in the national economy that plaintiff could perform. (AT 34-36.) Specifically, the ALJ found that plaintiff's past work as a nurse had provided her with the following transferrable skills: computer skills, general office skills, medical knowledge, and interpersonal skills. (AT 35.) With those transferrable skills and the RFC, plaintiff could perform other jobs such as home health aide, file clerk, and general clerk. (Id.)

Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from January 9, 2015, plaintiff's alleged disability onset date, through November 29, 2016, the date of the ALJ's decision. (AT 36.)

<u>Plaintiff's Substantive Challenges to the Commissioner's Determinations</u>

*Whether the ALJ improperly rejected the opinion of plaintiff's treating physician, Dr. Picetti*

In this case, all parties agree that plaintiff suffers from spinal impairments, after having two spinal surgeries, accompanied by symptoms from degenerative disc disease. (AT 279, 321.) The pertinent question is whether plaintiff's symptoms during the relevant period were so severe as to render her disabled for purposes of the Act.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1201-02 (9th Cir. 2001); <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. <u>Holohan</u>, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. <u>Lester</u>, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. <u>Lester</u>, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported

examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[4] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

In this case, plaintiff's treating physician, Dr. George D. Picetti, wrote a letter indicating that plaintiff was unable to return to gainful employment due to significant limitations after her surgery. (AT 681.) Because Dr. Picetti's opinion was contradicted by other opinions in the record, the ALJ was required to provide specific and legitimate reasons to discount Dr. Picetti's opinion. As discussed below, the court concludes the ALJ properly discharged that obligation.

As an initial matter, the ALJ reasonably observed that Dr. Picetti's opinion was entirely conclusory. (AT 33.) Dr. Picetti noted that after plaintiff's reconstructive surgery she "developed significant limitations" and "actually continues to do quite poorly." (AT 681.) He then concluded that plaintiff was "unable to return to gainful employment" and should seek disability. (Id.) The ALJ correctly noted that Dr. Picetti failed to provide any objective evidence to support his conclusion that plaintiff had significant limitations, and rather appeared to base his conclusion on plaintiff's subjective reports. (AT 33.) Dr. Picetti provided no express diagnoses, test results, clinical findings, or reasoning in support of the conclusion that plaintiff had significant limitations. (AT 681.) Moreover, Dr. Picetti did not explain in any detail what those limitations were. (Id.) As such, his opinion is conclusory and minimally supported and can be discounted on that basis. See Meanel, 172 F.3d at 1114 (treating physician's conclusory, minimally supported

---

[4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

opinion rejected).

Furthermore, the ALJ rationally found that Dr. Picetti's conclusory opinion was largely inconsistent with his own treatment records and the weight of the medical evidence. Despite plaintiff's subjective reports of severe symptoms, Dr. Picetti often documented relatively normal post-operation medical findings that showed plaintiff's recovery was progressing well. (AT 539-40, 543.) One month after the surgery, on May 28, 2015, Dr. Picetti reported, "[plaintiff's] x-rays show good positioning instrumentation, and beautiful alignment of the spine. She stands beautifully balanced in the coronal and sagittal planes. X-rays again confirm this." (AT 534.) Over a period of months, Dr. Picetti conducted several examinations of plaintiff, never indicating that plaintiff had any significant limitations, and reporting, on every occasion, that the x-rays confirmed "good positioning instrumentation alignment of the spine." (AT 539-40, 543.) Plaintiff's x-rays between June of 2015 and September of 2016 showed that she had good positioning and alignment of the spine and there were no signs of hardware failure. (AT 539-40, 543, 815-16.) The physical therapist noted that plaintiff walked with a "generally slowed, cautious [gait pattern], path deviation noted, no loss of balance"; further, plaintiff told the physical therapist that her "back is doing fine" but that her hips were bothering her. (AT 774, 776.) In August of 2016, plaintiff reported that over the past month, on average, when she was taking her medication, her pain level was a 3 out of 10. (AT 684.)

Finally, the ALJ's decision to give little weight to Dr. Picetti's letter is further bolstered by the opinions of the state agency physicians, Dr. Dann and Dr. Allen, who, after reviewing plaintiff's records, both concluded that there was significant evidence that plaintiff could perform light exertional work. (AT 79-101.) The ALJ reasonably relied on the opinions of Dr. Dann and Dr. Allen, according their opinions significant weight because of their consistence with the medical evidence. (AT 31-33.) See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record.").

7

In sum, the ALJ provided specific and legitimate reasons to discount Dr. Picetti's opinion. While plaintiff unquestionably suffers from symptoms of her spinal surgeries resulting in limitations to her daily life, the ALJ properly weighed the conflicting evidence and ultimately found, based on substantial evidence in the record as a whole, that such limitations were not present at a disabling level.

*Whether the ALJ improperly identified transferable skills that plaintiff acquired from her past work as a surgical nurse*

As noted above, the ALJ found, based on the VE's testimony, that plaintiff acquired computer skills, general office skills, medical knowledge, and interpersonal skills from her past relevant work as a surgical nurse, and that, with those skills and a RFC for light work, plaintiff could perform the occupations of home health aide, file clerk, or general clerk. (AT 35-36.) The VE testified that the general clerk and file clerk occupations were listed in the Dictionary of Occupation Titles ("DOT") at the light exertional level. (AT 62.) The VE also noted that, although the home health aide occupation was listed in the DOT at the medium exertional level, there were actually 500,000 jobs within that occupation available at the light exertional level. (AT 62.)

Plaintiff's argument that the ALJ's findings as to transferrable skills were generally not supported by substantial evidence is without merit. As an initial matter, "an ALJ may take administrative notice of any reliable job information, including information provided by a VE." Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). "A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." Id. Here, the VE specifically testified that plaintiff had acquired transferrable skills, such as computer skills, general office skills, medical knowledge, and interpersonal skills, from her past career as a surgical nurse. (AT 62.) Such testimony was well within the VE's domain of expertise. Moreover, plaintiff's own testimony supports that conclusion. Plaintiff acknowledged that she used computers and phones, reviewed and entered medical records, and communicated with doctors and other staff in the course of her work as a nurse. (AT 68-73.) See Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (stating that a claimant's own description of her past

8

work duties is "highly probative.")

Additionally, contrary to plaintiff's contention, the ALJ did not err in relying on the VE's testimony concerning the home health aide occupation, which the DOT classified as medium-level exertion. The VE and ALJ explicitly recognized that the VE's testimony deviated from the DOT, but the VE explained that, in his professional opinion, there were nonetheless a significant number of jobs available within that occupation which were actually performed at the light level. Thus, the deviation from the DOT was recognized, addressed, and supported by the competent testimony of the VE, on which the ALJ was entitled to rely.

CONCLUSION

For the foregoing reasons, the court concludes that the ALJ's decision is free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is GRANTED.
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.
4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: September 7, 2018

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE